UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
I.M., an infant by her Mother and Natural Guardian, :
Danielle Hartmann, and DANIELLE HARTMANN :
:
                       Plaintiffs, :      16-cv-07608 (LJL)
:
                -v- :      OPINION AND ORDER
:
M.D. LYNNE DISCOSTANZO, et al., :
:
                       Defendants. :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    This matter comes before the Court upon the application of I.M., an infant by her mother and natural guardian, Danielle McElnea (formerly Danielle Hartmann), for an infant compromise order approving the infant's settlement with defendant Orange Regional Medical Center. Upon review of the application and its supporting materials, the settlement and the award of attorney's fees are approved.

## BACKGROUND

### A. The Relevant Facts

    The facts relevant to the settlement are set forth in the Complaint and in Judge Walter's comprehensive opinion granting in part and denying in part Defendants' motion for summary judgment. *See* Dkt. Nos. 1; 158.

    I.M. was a one-year old baby at the time of the filing of this lawsuit in September 2016. Dkt. No. 1. Her mother, Ms. McElnea, was scheduled to deliver her on March 1, 2015 at the Orange Regional Medical Center ("ORMC") in Middletown, New York. DKT 158, at 5. As a result of difficulties during the delivery and alleged malpractice by the Defendants, the delivery

was changed to an emergency C-section and the mother was transferred to the Westchester Medical Center for emergency treatment. *Id.* at 7, 24. I.M. experienced what the parties agree was a form of brain damage called hypoxic ischemic encephalopathy which was caused by the lack of oxygen to the brain during delivery. She currently suffers from brain damage, cerebral palsy, seizures, and a variety of other injuries. However, as a result of post-operative care she received at Westchester Medical Center, I.M. was able to avoid the most serious of the consequences she risked from the difficulties during delivery. Dkt. No. 206, at 5-6.

On September 30, 2016, I.M., by her mother and natural guardian, Ms. McElnea, filed this lawsuit in federal court alleging medical malpractice. She named as defendants six doctors who were involved in her treatment and three resident nurses and nurse practitioners as well as the Middletown Community Health Center, Inc. ("MCHC"), the clinic that was responsible for treating Ms. McElnea and I.M. at the ORMC, the United States, which managed the MCHC as a federal clinic, the limited partnership which provided anesthesiology services, and the ORMC. Because the federal government managed the MCHC, I.M. asserted claims under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-80, as well as under state law.

On January 18, 2017, the Parties agreed by stipulation to dismiss certain individual Defendants and claims from this Action without prejudice because those individuals were employees of the United States and the exclusive remedy for their alleged negligent acts is an FTCA suit against the United States. Dkt. No. 72.

The ensuing litigation was hard fought and lengthy. Plaintiffs' counsel prepared Rule 26 initial disclosures and responded to interrogatories and document requests. Counsel defended Ms. McElnea's deposition and took the depositions of five doctors or resident nurses who were

2

defendants. Six expert depositions were taken.

Defendants moved for summary judgment arguing that ORMC was not liable in respondeat superior for the alleged negligence and malpractice of three doctors and one nurse who were not under its employ and that it was shielded from liability because the doctors were acting under the instructions of a privately contracted physician. Dkt. No. 121, at 14-16. Defendants also argued that Plaintiffs' claims were not supported by sufficient expert evidence. Dkt. No. 121, at 12-14. These motions were supported by extensive authority and presented a serious challenge to Plaintiffs' claims. Counsel successfully defended against them. Dkt No. 158, at 69-70.

Following the Court's decision on summary judgment, the Court held a pretrial conference and the case was scheduled to go to trial on March 9, 2020. The case against ORMC settled only on the eve of trial. On March 3, 2020, Plaintiffs and ORMC submitted the proposed settlement. On March 5, 2020, the Court held a hearing on the case in general in which the Court asked the Plaintiffs to submit additional information that appeared to be missing from the application. On March 6, 2020, Plaintiffs made that submission. On March 17, 2020, the Court held a conference with both parties to obtain additional information needed to evaluate the fairness of the settlement to the infant.

## DISCUSSION

### A. The Settlement Is Approved

The local rules of the Southern District of New York and New York State statutes and rules set forth the standards that govern this Court's review of the proposed settlement. Local Civil Rule 83.2 of the Local Rules of the United States District Courts for the Southern and

3

Eastern Districts of New York governs settlement of actions by or on behalf of infants or incompetents. It directs the Court to New York State statutes and rules governing the approval of settlements by or on behalf of infants:

> (a) Settlement of Actions by or on Behalf of Infants or Incompetents.
> (1) An action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the Court embodied in an order, judgment or decree. The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement.
>
> (2) The Court shall authorize payment to counsel for the infant or incompetent of a reasonable attorney's fee and proper disbursements from the account recovered in such an action, whether realized by settlement, execution or otherwise and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund.

Local Civil Rule 83.2.

The relevant New York State statute and rule to which the Local Rule directs the Court is N.Y. C.P.L.R. 1208 (McKinney) ("CPLR 1208"). That law contains certain procedural requirements including that the application be supported by an affidavit of the infant's representative setting forth the circumstances giving rise to the action, the nature and extent of the damages sustained by the plaintiff, the proposed terms and distribution of the settlement, and other information helpful in assessing the settlement on behalf of the infant. *See* CPLR 1208(a). The law also requires the attorney to submit an affidavit setting forth the reasons that attorney offers for recommending the settlement and the services rendered by the attorney. *See* CPLR 1208(b). The application must also contain the relevant medical or hospital reports. *See* CPLR 1208(c).

The Second Circuit has held that Local Civil Rule 83.2 does not impose "rigid" obligations on federal district courts with respect to the procedural requirements; an applicant

4

may be relieved from some of those requirements "for cause shown." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 655 (2d Cir. 1999).

Judge Engelmayer has laid out the factors the Court should consider in determining whether to approve an infant settlement. *See Campbell v. City of New York*, No. 15 Civ. 2088 (PAE), 2015 WL 7019831 (S.D.N.Y. Nov. 10, 2015). "[T]he Court must assess whether the proposed settlement is 'fair, reasonable, and adequate by comparing the terms of the compromise with the likely rewards of litigation.'" *Id.* at *2 (quoting *Everett v. Bazilme*, No. 06 Civ. 0369 (SJ)(JO), 2007 WL 1876591, at *2 (E.D.N.Y. June 28, 2007) (internal quotations omitted)). Judge Engelmayer goes on to state:

> There is a strong presumption that a settlement is fair and reasonable where "'(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently.'" *Orlandi ex rel. Colon v. Navistar Leasing Co.,* No. 09 Civ. 4855(THK), 2011 WL 3874870, at *2 (S.D.N.Y. Sept.2, 2011) (quoting *Ross v. A.H. Robins Co., Inc.,* 700 F.Supp. 682, 683 (S.D.N.Y.1988)). Other factors to consider include "the complexity, and expense, and likely duration of litigation ... [and] the risks of establishing both liability and damages." *D.J. ex rel. Roberts,* 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinned Corp.,* 495 F.2d 448, 463 (2d Cir.1974)) (internal citations omitted). Finally, courts afford "significant deference" to a guardian's view that the settlement reached is fair and reasonable to the infant plaintiff. *Orlandi,* 2011 WL 3874870, at *2; *see also Stephen v. Target Corp.,* No. 08 Civ. 338(CPS)(JG), 2009 WL 367623, at *3 (E.D.N.Y. Feb. 12, 2009) (adopting report and recommendation); *Stahl v. Rhee,* 220 A.D.2d 39, 643 N.Y.S.2d 148, 153 (2d Dep't 1996) (noting that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

*Campbell*, 2015 WL 7019831, at *2.

The proposed settlement satisfies those standards. It has a total settlement value of $391,354.17, with $250,000 to be paid in pain and suffering and loss of consortium on behalf of the mother prior to reduction for attorney's fees. Dkt. No. 191-7, at 3-4. That figure comes on top of $3.85 million in pain and suffering already paid by other defendants in this case for a total

5

of $4.1 million in pain and suffering. Dkt. No. 206, at 16. Combined with value already received from other defendants for past and future medical care, the aggregate settlement value obtained by counsel for I.M. totals approximately $7 million. Dkt. No. 204, at 2. The parties represent, and the Court accepts, that the $4.1 million figure adequately compensates I.M. for pain and suffering and the aggregate settlement value of $7 million compensates plaintiff for her injuries. The parties represented at the conference that, as a result of the settlement and the operation of New York law, all of I.M.'s medical needs for the future resulting from this occurrence will be covered by the New York State Medical Indemnity Fund. Dkt. No. 206, at 9. It is represented to the Court by both parties, and the Court accepts, that the payment of $17,243.32 to the infant's mother for loss of services is consistent with the formula that is customary in these matters. Dkt. No. 206, at 15. It does not seem sufficiently large to call into question the integrity of the settlement or the fairness of it to I.M.

In addition, I.M. faced litigation risk. As noted by Plaintiffs' counsel, Defendant would have had a substantial comparative negligence defense at trial as "[a] majority of the obstetric malpractice could be attributed to Dr. DiCostanzo who already settled and a majority of the neonatal malpractice could be attributed to Dr. Senguttuvan and Nurse Practitioner Hines who also already settled." Dkt. No. 204, at 2. Moreover, while I.M. prevailed in defeating ORMC's motion for summary judgment, the Court identified issues of fact I.M. would have had to establish at trial including whether ORMC was liable in respondeat superior for the alleged negligence of doctors and nurses who were not under its employ and whether it was shielded for liability based on the contention that the doctors were acting at the direction of a privately-retained physician. Dkt. No. 158, at 56-59.

The application is supported by the declaration of the infant's mother and representative who believes the settlement to be fair and reasonable and asks for the Court to approve the settlement. Dkt. Nos. 191-2. It is also supported by the declaration of Plaintiffs' counsel averring that the settlement was reached as a result of arms-length negotiations after discussions that took place over several months. Dkt. No. 191-7, at 3. Counsel has further averred that the two sides started significantly apart and that multiple settlement numbers were exchanged between the parties. Dkt. No. 204, at 1-2. The Court has before it evidence that both counsel are experienced in these types of cases. Dkt. No. 206, at 4. As noted above, the settlement was not reached until the parties were at the eve of trial and only after the parties had taken depositions and plaintiff's counsel had defended against summary judgment.

Finally, the settlement is supported by all of the representations and attestations required by New York State law, whether provided in the form of written declarations or, sometimes, in the form of oral attestations the Court elicited at the March 17 conference. The representative has set forth her relationship to the infant and all of the other information required by CPLR 1208. It is also supported by an affidavit of I.M.'s attorney who recommends the settlement and also attested at the conference that he has neither become concerned in the settlement at the instance of a party or person opposing, or with interests adverse to, the infant nor received nor will receive any compensation from such party. Dkt. No. 206, at 22; *see also* CPLR 1208(b)(2).

B. The Attorney's Fee Award is Approved

The Court has authority and responsibility under Local Civil Rule 83.2 to "authorize payment to counsel for the infant or incompetent of a reasonable attorney's fee and proper disbursements." The law applicable to the calculation of an attorney's fee is set forth in Section

7

474 of the New York Judiciary Law.  It provides:

> The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law, except that no agreement made hereafter between an attorney and a guardian of an infant for the compensation of such attorney, dependent upon the success of the prosecution by said attorney of a claim belonging to said infant, or by which such attorney is to receive a percentage of any recovery or award on behalf of such infant or a sum equal to a percentage of any such recovery or award, shall be valid or enforceable unless made as hereinafter provided.  An attorney may contract with the guardian of an infant to prosecute, by suit or otherwise, any claim for the benefit of an infant for a compensation to said attorney dependent upon the success in the prosecution of such claim, subject to the power of the court, as hereinafter provided, to fix the amount of such compensation.  Whenever such a contract shall have been entered into between an attorney and a guardian of an infant, upon the recovery of a judgment, or the obtaining of an award in behalf of the said infant, or upon any compromise or settlement of such claim, the attorney may apply, upon notice to the guardian, to the judge, justice or surrogate before whom the said action or proceeding was tried, or to whom an application for compromise or settlement was made, in case the said action or proceeding was tried, or the said application was made at a court held within this state;  or to a special term of said court, in case the said action or proceeding was tried before some person other than a justice thereof, or said claim was compromised or settled after said suit was begun, or in case of the death or disability of the judge or justice before whom the action was tried;  or to special term of the supreme court in case the recovery, award, compromise or settlement was not had in any court of this state.  Such application shall set forth briefly the contract, the services performed by the attorney and pray that there be awarded to him a suitable amount out of the recovery, award, compromise or settlement obtained through his efforts as attorney on behalf of the infant.  The court, judge or surrogate to which such application is made, upon being satisfied that due notice of the said application has been given to the said guardian, shall proceed summarily to determine the value of the services of said attorney, taking such proof from either the attorney or the guardian by affidavit, reference or the examination of witnesses before the said court, judge or surrogate, as may seem to be necessary and proper, and shall thereupon make an order determining the suitable compensation for the attorney for his services therein, which sum shall thereafter be received by the said attorney for his services in behalf of the said infant;  and no other compensation shall be paid or allowed by the guardian for such services out of the estate of said infant.  If a copy of such order awarding the compensation with notice of entry be thereafter served by the said attorney upon the adverse party to the said litigation or the person making such compromise or settlement and upon the custodian of the funds recovered, in case there be such custodian, such award shall become and constitute a lien to the amount thereof on behalf of the said attorney upon such recovery, award, settlement or fund.

N.Y. Judiciary Law § 474.

Thus, in approving an infant settlement, the Court must not simply accept the contingency fee agreement between the parties. On an application to approve an infant settlement, the amount of attorney compensation is fixed by and to be approved by the court. *Id.* "This requirement arises from the court's duty to protect infants and other wards of the court." *White v. DaimlerChrysler Corp.*, 57 A.D.3d 531, 533 (App. Div. 2d Dep't 2008). Section 274 directs the Court to "determine the value of the services of said attorney" and to order "suitable compensation for the attorney for his services" based on whatever proof the court determines to be necessary and proper including affidavits from the guardian and attorney and the examination of witnesses. N.Y. Judiciary Law § 474.

In *DaimlerChrysler Corp.*, the court set forth the factors to be considered in determining the amount of suitable compensation and the value of the attorney services. The contract between the attorney and guardian is "one of the elements which the judge may take into consideration in fixing the reasonable compensation." *DaimlerChrysler Corp.*, 57 A.D.3d at 534. The other relevant factors include (1) the "skill, diligence, and expertise" of counsel; (2) the result she achieves; (3) the "time and labor" devoted to the case; (4) the "customary fee charged by members of the Bar for similar services" and (5) the "certainty of compensation at the beginning of the case." *Id.* at 535. In addition, New York regulates the contingency fees an attorney can charge and the courts will consider the relationship of the contingency fee to that permitted under New York law. *Id.* Notably, these factors are similar to the factors the New York courts consider in determining a reasonable attorneys fee in a guardianship proceeding. *See*, e.g., *Matter of Catherine K*, 22 A.D.3d 850, 851-52 (App. Div. 2d Dep't 2005) (considering "(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented, (2) the attorney's experience, ability, and reputation, (3) the

9

amount involved and the benefit flowing to the ward as a result of the attorney's services, (4) the fees awarded in similar cases, (5) the contingency or certainty of compensation, (6) the results obtained, and (7) the responsibility involved.") (citing *Matter of Freeman*, 34 N.Y.2d 1 (1974)). As the New York Court of Appeals stated in *Matter of Freeman*:

> Long tradition and just about a universal one in American practice is for the fixation of lawyers' fees to be determined on the following factors: time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; the lawyer's experience, ability and reputation; the amount involved and benefit resulting to the client from the services; the customary fee charged by the Bar for similar services; the contingency or certainty of compensation; the results obtained; and the responsibility involved.
>
> 355 N.Y.2d at 9.

The award of $77,566.78 of attorney's fees with 50% to be allocated to the non-fund element of damages is reasonable. Although the contingency fee agreement between counsel and I.M.'s representative is only "one of the elements" that the court should consider in fixing an appropriate attorneys fee and is to be treated as "advisory only," *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458 (JGK)(DF), 2012 WL 5431034, at *3 (S.D.N.Y. Oct. 16, 2012), *adopted by* 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (*quoting Orlandi ex rel. Colon v. Navistar Leasing Co.*, No 09 Civ. 4855 (TKH), 2011 WL 3874870, at *4 (S.D.N.Y. Sept. 2, 2011)), the Court gives weight to the fact that the fee is consistent with that agreement. In particular, the Court notes that both the infant's representative and counsel aver that the retainer was signed only "[a]fter extensive interviews." Dkt. No. 191-7, at 1; Dkt. No. 191-2, at 1. s

The fee and retainer agreement also are consistent with the requirements of N.Y. Public Health Law § 2999-j(14) passed in connection with the creation of the New York State Medical Indemnity Fund which was designed to "provide a funding source for future health care costs

associated with birth related neurological injuries." NY Public Health Law § 2999-g. The law reflects the considered judgment of the New York State legislature that fee arrangements of the type here are appropriate to induce qualified counsel to assume the risk of taking on cases involving birth-related neurologic injuries while at the same time protecting the family and the infant. The statute provides, in relevant part, that "qualified plaintiff's attorney's fee shall be paid in a lump sum by the defendants and their insurers pursuant to section four hundred seventy-four-a of the judiciary law," § 2999-j(14); the New York Judiciary Law, in turn, caps the attorneys' fees that may be awarded in a medical malpractice action to 30 percent of the first $250,000 of the sum recovered, with a sliding scale of a decreasing percentage for recoveries above $250,000. N.Y. Judiciary Law § 474-a(2). In other infant compromises not regulated by New York Public Health Law § 2999-g *et seq.*, courts have "generally approved payments that are one-third contingency arrangements." *Rodney v. City of New York*, No. 13-Cv-6179, 2015 WL 1014165, at *6 (E.D.N.Y. Mar. 6, 2015). Here, by operation of the contingency fee agreement and the New York Public Health Law, the requested attorney's fees are less than 20% of the total settlement value of $391,354.17. *See* NY Public Health Law 2999-j(14) (providing that "[t]he determination of the qualified plaintiff's attorney's fee shall be based upon … the full sum of the settlement"). The Court sees no reason here to depart from the presumptive attorney's fee schedule set by the New York legislature.

The award is also reasonable in light of "the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented." *Matter of Catherine K*, 22 A.D.3d at 851-52. Counsel's March 6, 2020 declaration set forth the hours expended by counsel in prosecuting the case against ORMC, including the taking and defending of depositions, the preparation of a complaint, the review of documents, the review and preparation

11

of expert reports, and work in connection with the summary judgment motion. Those hours totaled 279.8. Dkt. No. 204, at 4-5. Although counsel clarified during the March 17 hearing that some of those hours also benefitted the case against other defendants, he also represented that he excluded from his calculation of time any work done exclusively with respect to the other defendants. The Court has examined the tasks counsel performed and the hours expended and finds they are reasonable. Dividing the requested fee award by the total hours expended on the matter, the requested fee award is equivalent to an award of a little more than $277 per hour. The Court finds that amount appropriate in light of the experience, ability and reputation of counsel, the contingency of the compensation, and the benefit obtained. *Matter of Catherine K*, 22 A.D.3d at 851-52.

Finally, in approving the fee award, the Court has considered the quality of the evidence regarding the hours expended by counsel on this matter. Counsel has submitted a declaration with his estimate of the hours that he spent on the matter with the tasks that he performed but he has not submitted contemporaneous time records. There are cases in which counsel has been penalized for a failure to submit contemporaneous time records through a reduction of attorneys. *Cf. Roberts*, 2012 WL 5431034, at *8 n.8 (noting that in infant compromise cases where the infant's counsel has neither maintained nor presented any time records, courts have typically applied a percentage reduction to the contingency fee) (citing *Griffiths v. Jugalkishore*, No. 09 Civ. 2657 (LTS)(KNF), 2010 WL 4359230, at *7 (S.D.N.Y. Oct. 13, 2010) *adopted by* 2010 WL 4365552 (Nov. 3, 2010)); *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 378-79 (S.D.N.Y. 2010); *Mateo v. United States*, No. 06 Civ. 2647 (KNF), 2008 WL 3166974, at *4-5 (S.D.N.Y. Aug 6, 2008). There is no basis here for such a reduction. The cases that reduce the contingency fee award for absence of contemporaneous documentation appear to derive that

requirement from the United States Supreme Court's interpretation of fee-shifting awards under federal statutes. They reflect the federal court's view of the intent of the United States Congress. *See Roberts*, 2012 WL 5431034, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (requiring party seeking fees in Section 1983 case to submit evidence supporting hours worked and rates claimed and holding that district court may reduce the award where the documentation of hours is inadequate)); *Martegani*, 687 F. Supp. 2d at 378 (citing *Hensley*, 461 U.S. at 433); *Griffiths*, 2010 WL 4359230, at *6 (citing *Hensley*, 461 U.S. at 433; *Mateo*, 2008 WL 3166974, at *3 (citing *Hensley*, 461 U.S. at 433). Here, by contrast, Local Civil Rule 83.2 directs the Court to New York State law in determining the appropriate fee in a New York State medical malpractice action and New York State law reflects no such strict requirement that the attorney keep and prepare contemporaneous time records. To the contrary, it provides that the court may consider evidence in the form of affidavits from the attorney in determining an appropriate fee award. *See* N.Y. Judiciary Law § 474 ("[the Court] shall proceed summarily to determine the value of the services of said attorney, taking such proof . . . by affidavit, reference or the examination of witnesses"). Counsel has submitted an affidavit that permits the Court to calculate a lodestar. The Court needs no more to approve the fee award.[1]

---

[1] For similar reasons, although the Court has examined the lodestar, it has not used it as a "starting point" as suggested by some cases in this District. *See, e.g., Campbell*, 2015 WL 7019831, at *4; *Roberts*, 2012 WL 5431034, at *6, *adopted by Roberts v. City of New York*, No. 11 Civ. 5458, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012). Those cases rely on a citation to a federal case interpreting a federal statute. *See Roberts*, 2012 WL 5431034, at *4 (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (interpreting fee-shifting provision in Family and Medical Leave Act)). As the Supreme Court case cited in *Millea* reflects, the federal jurisprudence regarding attorney's fees in federal cases is based on the courts' "understanding of the aim of [federal] fee-shifting statutes." *See Perdue v. Kenny A. ex rel. Winn*, 559 US 542, 551 (2010); *see also id.* at 559 (interpreting fees available under 42 U.S.C. § 1988 to be consistent "with the statute's aim"); *Hensley*, 461 U.S. at 430, 433 (examining the legislative history of Section 1988 to determine how fee-shifting award should be determined). It is not at all clear that the approach taken by the federal courts with respect to federal fee-shifting statutes is what the New York State legislature would have expected the federal and state courts to take when reviewing a settlement proposed by an infant guardian on behalf of an infant.

## CONCLUSION

For the reasons stated, the proposed settlement is approved as is the award of attorneys fees.

SO ORDERED.

Dated: March 23, 2020
New York, New York

_____
LEWIS J. LIMAN
United States District Judge